IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CARLOS HERRERA,

      Plaintiff,

                                              Civil No. 13-1176 MV/SCY

   v.

RANDY DORMAN, individually and in his official
Capacity, MARY JANE CHAVEZ, individually
and in her official capacity, B. GARRETT, individually
and in his/her official capacity, LIA ARCHULETA,
individually and in her official capacity,
WARDEN ERASO BRAVO in his individual and
official capacity, GREGG MARCANTEL in his
individual and official capacity, and JOHN/JANE DOE
classification officer, individually and in his/her official capacity,

      Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on First Motion to Dismiss on Behalf of Randy Dorman, Lia Archuleta and Gregg Marcantel and Memorandum in Support Thereof [Doc. 23] and Plaintiff's Motion to Strike Doc. 30 as Untimely Filed [Doc. 33].   The Court, having considered the motions, briefs, relevant law and being otherwise fully informed, finds that the First Motion to Dismiss is well-taken in part and will be granted in part, and Plaintiff's Motion to Strike is not well-taken and will be denied.

## BACKGROUND

Plaintiff Carlos Herrera was an inmate incarcerated at the Guadalupe County Correctional Facility in Santa Rosa, New Mexico.   Doc. 10 (Complaint) ¶ 1.   At the time of Defendant's incarceration, Defendant Gregg Marcantel was the Director of the New Mexico Corrections

Department ("NMCD"), and as such, "was directly responsible for carrying out lawful sentences imposed on persons remanded to the NMCD for incarceration by the New Mexico state court system, and to release all prisoners upon the end of their sentences."   *Id.* ¶ 4.   At the same time, Defendant Randy Dorman was the advanced records coordinator and classification officer employed by the NMCD, and Defendant Lia Archuleta was a classification officer employed by the NMCD.  *Id.* ¶¶ 5, 9.

Plaintiff should properly have been released on April 9, 2012, but was not actually released until August 24, 2012, because Defendants "constructed" Plaintiff's file such that the sentences he received in connection with two convictions ran consecutively rather than concurrently.  *Id.* ¶¶ 16-18.   Defendants Dorman and Archuleta "participated in the calculations of time and the certification of Mr. Herrera's time while he was incarcerated and should have known that the charges were to run concurrent[ly]."  *Id.* ¶ 21.   Plaintiff thus served 137 days "beyond when his incarceration should have terminated."  *Id.* ¶ 23.

As a result of his allegedly improperly continued incarceration, Plaintiff commenced the instant action, and filed his First Amended Complaint on January 20, 2014.   Doc. 10.   Plaintiff names Defendants both individually and in their official capacity.  *Id.*   The Complaint sets forth three claims pursuant to 42 U.S.C. Section 1983, alleging violations of his Eighth Amendment rights (Count 1), Fourteenth Amendment procedural due process rights (Count 2), and Fourth Amendment rights (Count 3), and one claim under the New Mexico Tort Claims Act ("NMTCA"), alleging false imprisonment and false arrest (Count 4).  *Id.*   Based on these claims, Plaintiff seeks money damages and attorney's fees.  *Id.* at 6.

On February 13, 2014, Defendants Dorman, Archuleta and Marcantel ("Defendants") filed a motion to dismiss all counts of the Complaint.   Doc. 23.   Plaintiff filed a response in opposition

on February 27, 2014.   Doc. 24.   Defendants filed a reply on March 17, 2014.   Doc. 30.   On that

same day, Plaintiff filed a motion to strike Defendants' reply as untimely filed.   Doc. 33.

Defendants filed a response in opposition on March 18, 2014, Doc. 34, and Plaintiff's reply

followed on March 21, 2014.   Doc. 35.

## DISCUSSION

I.   Plaintiff's Motion to Strike

Plaintiff asks the Court to "strike" Defendants' reply brief on the ground that it was filed

five days late.   Specifically, Plaintiff argues that, under the local rules, Defendants had 14

calendar days to file their reply, making it due on Thursday March 13, 2014, but they instead filed

it on Monday March 17, 2014.

Plaintiff's argument ignores the fact that under the relevant local and federal rules of civil

procedure, because the parties' briefing was served electronically, and because electronic service

is subject to the time calculations as service by mail, Defendants had 14 days *plus three days* to file

their reply.   D.N.M. LR-Civ. 5.1(a)-(b), 7.4(a); Fed. R. Civ. P. 5, 6.   Plaintiff filed his response

electronically on February 27, 2014.   Because the seventeenth day after Plaintiff filed his

response, March 16, 2014, fell on a Sunday, Defendants had until Monday March 17, 2014 to file

their reply.   *See id.*   Defendants did, in fact, file their reply on March 17, 2014.   Accordingly,

Defendants' reply was timely filed, and Plaintiff's motion is without merit.

II.   Defendants' Motion to Dismiss

Under Rule 12(b)(6), a Court may dismiss a complaint for "failure to state a claim upon

which relief can be granted."   Fed. R. Civ. P. 12(b)(6).   "The nature of a Rule 12(b)(6) motion

tests the sufficiency of the allegations within the four corners of the complaint."   *Mobley v.*

*McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).   When considering a 12(b)(6) motion, the Court

must accept as true all well-pled factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor.  *Smith v. United States*, 561 F.3d 1090, 1097 (10th Cir. 2009), *cert. denied*, 130 S. Ct. 1142 (2010).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Accordingly, while the Court must take all of the factual allegations in the complaint as true, "a plaintiff armed with nothing more than conclusions" cannot survive a motion to dismiss.  *Iqbal*, 556 U.S. at 679.

Although recognizing the proper standard on a motion to dismiss, Plaintiff nonetheless asks this Court to convert Defendants' motion into a motion for summary judgment and consider the evidence submitted along with his response in determining the merits of Defendants' motion. The Court finds no valid basis for treating Defendants' motion as one for summary judgment. Defendants did not submit, cite to, or rely upon any matters or documents outside of the pleadings in bringing their motion, Plaintiff did not include any such materials in his Complaint in the first instance, and Plaintiff was able to respond to Defendants' motion without further discovery. Under these circumstances, it is proper for the Court to consider Defendants' motion based solely on the sufficiency of the allegations set forth in the Complaint.  *See Montoya v. Española Pub. Sch. Dist. Bd. of Educ.*, No. CV-10-651 WPJ/LFG, Doc. No. 330, Mem. Op. and Order (D.N.M.

4

Nov. 7, 2012), at 4-5**.**

Defendants argue that dismissal of Plaintiff's claims is warranted on several grounds. Specifically, Defendants argue that: (1) Defendants cannot be sued for money damages in their "official capacity"; (2) Plaintiff's claims are insufficient to provide notice because they fail to differentiate among Defendants; (3) Plaintiff has failed to plead any facts demonstrating Marcantel's personal involvement in the violation of Plaintiff's constitutional rights; (4) Plaintiff has failed to plead any facts entitling him to declaratory relief and has not requested declaratory relief, and thus there is no basis for an official capacity claim against Defendants; and (5) Plaintiff has failed to plead a cause of action that comes within the provisions of the NMTCA.   In his response, Plaintiff concedes that he has not brought a declaratory relief claim, but nonetheless argues that all of his claims, including the official capacity claims, should survive Defendants' motion to dismiss.

A.     Plaintiff's "Official Capacity" Claims

In their official capacity, Defendants argue that they are entitled to Eleventh Amendment immunity on Plaintiff's damages claims.   "A state enjoys immunity unless it has been abrogated by Congress or waived."  *Amin v. Voigtsberger*, __ F. App'x __, 2014 WL 1259570, *1 (10th Cir. Mar. 28, 2014).   Such immunity "applies not only to claims asserted directly against the state, but also against state officials sued in their official capacity for damages."  *Id.*

Eleventh Amendment immunity has not been abrogated by Congress or waived by New Mexico.  *Id.*; NMSA 1978 § 41-4-4(F) (noting that nothing in prior subsections of the Tort Claims Act shall constitute "waiver of the state's immunity from suit in federal court under the eleventh amendment to the United States constitution").   Accordingly, Defendants are entitled to Eleventh Amendment immunity on the official capacity claims for damages.

Unlike claims for money damages, claims for declaratory and injunctive relief may be brought against state officials sued in their official capacity.  *Amin*, 2014 WL 1259570, at *2. Plaintiff, however, has not requested any such declaratory or injunctive relief in his Complaint, and has confirmed in his response that he has not brought a declaratory relief claim.   Accordingly, there is no basis for Defendants to be sued in their official capacity in this action.   The Court thus will dismiss all claims against Defendants in their official capacity.

        B.     <u>Plaintiff's Section 1983 Claims</u>

In Counts 1, 2 and 3 of the Complaint, Plaintiff brings claims under Section 1983 alleging that Defendants, in their individual capacity, violated his Eighth, Fourteenth, and Fourth Amendment rights, respectively.   Defendants argue that these claims fail as to each of them, for various reasons, as discussed herein.

        1.     <u>Defendant Marcantel</u>

Defendants argue that Plaintiff's constitutional claims must fail as to Marcantel because the Complaint does not allege any affirmative link between Marcantel and the alleged violations against Plaintiff.   Section 1983 "does not allow a plaintiff to hold an individual government official liable under a theory of respondeat superior."   *Dodds v. Richardson*, 614 F.3d 1185, 1194-95 (2010), *cert. denied*, 131 S. Ct. 2150 (2011).   Rather, "§ 1983 liability [may] only be imposed upon those defendants whose own actions cause a constitutional deprivation."   *Id.* at 1200.   Although a plaintiff need not show that a defendant "physically plac[ed] hands on him," a plaintiff must demonstrate "an affirmative link" between the supervisor and the [constitutional] violation."   *Id.*   In particular:

> A plaintiff may [] succeed in a § 1983 suit against a defendant-supervisor by demonstrating:   (1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm; and (3) acted with the state of mind required to

establish the alleged constitutional deprivation.

*Id.* at 1199.

Here, Plaintiff mentions Marcantel only once in the entire Complaint, in the introductory section entitled, "Parties, Jurisdiction, and Venue," stating that Marcantel, at all relevant times, was "Director" of NMCD, and "was directly responsible for carrying out lawful sentences imposed on persons remanded to the NMCD for incarceration by the New Mexico state court system, and to release all prisoners upon the end of their sentences."   Doc. 10 ¶ 4.   This allegation is wholly insufficient to establish that Marcantel's own actions caused a deprivation of Plaintiff's constitutional rights.   Nowhere does Plaintiff allege that Marcantel promulgated, created, implemented, or was responsible for operating any policy, or that he acted with the state of mind required to establish the alleged constitutional deprivations.   Indeed, nowhere does Plaintiff allege that the constitutional harms against him were, in the first instance, the result of an NMCD policy.   Without any allegations that, if proven, would demonstrate an affirmative link between Marcantel and the alleged constitutional violations against Plaintiff, Section 1983 liability may not be imposed against Marcantel.   Counts 1, 2, and 3 thus must be dismissed as to Marcantel.

2.   <u>Plaintiff's Fourth Amendment Claim</u>

In Count 3 of the Complaint, Plaintiff claims that "by requiring that Mr. Herrera remain in custody beyond the proper conclusion of his sentence, Defendants were responsible for Mr. Herrera having been deprived of his right to be free from illegal seizures of his person in violation of his rights under the Fourth Amendment to the United States and New Mexico Constitution." Doc. 10 ¶ 31.   Plaintiff bases his Fourth Amendment claim solely on his continued incarceration after April 9, 2012.   Defendants argue that the allegation of Plaintiff's continued incarceration does not support a valid Section 1983 claim based on an alleged Fourth Amendment violation, and

accordingly, Count 3 must be dismissed.

"[A] Fourth Amendment violation can exist only when a plaintiff alleges the legal process itself to be wrongful.   If a plaintiff challenges merely the confinement *after* the institution of the legal process, but not the process itself, the protections offered by the Fourth Amendment do not apply."   *Wilkins v. DeReyes*, 528 F.3d 790, 798 (10th Cir. 2008) (emphasis in original) (quoting *Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000)).   Accordingly, "[t]he protections offered by the Fourth Amendment do not apply if the plaintiff challenges only continued incarceration."   *Jones*, 203 F.3d at 880; *see also Luckes v. County of Hennepin*, 415 F.3d 936, 939 (8th Cir. 2005) ("Because Luckes was named in a valid bench warrant . . . his Fourth Amendment argument is thus without merit.   Rather, Luckes's claim that his extended detention violated his constitutional rights is more properly analyzed under the framework of the Due Process Clause of the Fourteenth Amendment"); *Armstrong v. Squadrito*, 152 F.3d 564, 569 (7th Cir. 1998) ("Armstrong's Fourth Amendment claim drops out of the case because that amendment governs the period of confinement between arrest without a warrant and the preliminary hearing at which a determination of probable cause is made, while due process regulates the period of confinement after the initial determination of probable cause); *Pierce v. Multnomah County*, 76 F.3d 1032, 1043 (9th Cir. 1996) ("The Fourth Amendment sets the applicable constitutional limitations on the treatment of an arrestee detained without a warrant up until the time such arrestee is released or found to be legally in custody based upon probable cause for arrest."); *but see Chavez v. Bernalillo*, 2014 WL 936426, *41 (D.N.M. Jan. 31, 2014) (allowing claim under Fourth Amendment for continued incarceration when claim is based on false arrest or false imprisonment, rather than malicious prosecution).

Here, Plaintiff does not allege that his arrest or initial incarceration ran afoul of the

Constitution, but rather alleges that his continued incarceration after April 9, 2012 was unconstitutional. Because Plaintiff bases his claim solely on his allegedly improperly continued incarceration, the Fourth Amendment is inapplicable to his claim. The Court thus will dismiss Plaintiff's Fourth Amendment claim, as set forth in Count 3 of the Complaint, as to all Defendants.

3.   Fair Notice to Defendants of Claims

Defendants argue that the Complaint's allegations of constitutional violations are inadequate because they fail to provide fair notice as to the basis of the claims against each Defendant. "Context matters in notice pleading. Fair notice under Rule 8(a)(2) depends on the type of case." *Robbins v. Okla.*, 519 F.3d 1242, 1250 (10th Cir. 2008) (citation omitted). The Tenth Circuit has specifically stated that in Section 1983 cases, "it is particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective actions against the state." *Id.* (emphasis in original). Accordingly, "the burden rests on the plaintiffs to provide fair notice of the grounds for the claims made against each of the defendants." *Id.* Where a complaint uses "either the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom," the plaintiff's burden to provide fair notice is not met, as the defendants cannot "ascertain what particular unconstitutional acts they are alleged to have committed." *Id.*

As explained above, Count 3 of the Complaint must be dismissed for failure to state a claim under the Fourth Amendment, and all of Plaintiff's Section 1983 claims must be dismissed as to Marcantel. The Court thus addresses only whether Counts 1 and 2 of the Complaint provide sufficient notice to Dorman and Archuleta of the claims against them.

While Plaintiff's Complaint is not a model of specificity, it is also not the completely

generic complaint in *Robbins*, which grouped 16 different defendants, who were "entirely different in character," into one single allegation.   *Id.*   Here, the Complaint specifically alleges that both Dorman and Archuleta were classification officers who directly participated in the calculations of time and the certification of Plaintiff's time while he was incarcerated.   According to Plaintiff, the miscalculations made by, *inter alia,* Dorman and Archuleta led to his improperly prolonged incarceration, which, in turn, violated his Eighth and Fourteenth Amendment rights. Plaintiff thus has done the bare minimum necessary to provide notice to Dorman and Archuleta of the basis of his claims against them.[1]   The Eighth Amendment and Fourteenth Amendment claims against Dorman and Archuleta thus will not be dismissed.

      C.     <u>Plaintiff's State Law Claims</u>

In Count 4 of the Complaint, Plaintiff alleges that Defendants' improperly prolonged detention of him constitutes "false arrest and false imprisonment" in violation of state law.   Doc. 10. ¶ 35.   According to Plaintiff, immunity is waived for Defendants' actions under Sections 41-4-6 and 41-4-12 of the NMTCA.   *Id. ¶* 11.   Defendants argue that Plaintiff's state law claims must be dismissed, as no waiver of immunity applies under the circumstances here.

"The potential tort liability of governmental entities and public employees is limited by the Tort Claims Act."   *Archibeque v. Moya*, 866 P.2d 344, 346 (N.M. 1993).   "Section 41-4-4(A) provides that governmental entities and public employees acting within their scope of duty 'are granted immunity from liability for any tort except as waived by Sections 41-4-5 through 41-4-12.'"   *Id.*   Thus, the NMTCA "shields governmental entities and public employees from

---

[1] On the other hand, the Complaint fails to allege with any specificity the claims attributable to Marcantel, and thus it is impossible to determine what unconstitutional acts he is alleged to have committed.   Accordingly, Plaintiff has failed to provide fair notice of the grounds for the claims made against Marcantel, and dismissal of Counts 1 and 2 as to Marcantel is warranted on this additional ground.

tort liability unless immunity is specifically waived by the [NMTCA]."   *Id.*   The issue here is

whether Defendants' immunity has been waived under either Section 41-4-6, the "premises

liability" provision, or Section 41-4-12, the "law enforcement officer" provision.

1.     Waiver of Immunity for Premises Liability

Section 41-4-6 provides in relevant part:

> The immunity granted pursuant to [Section 41-4-1(A)] does not apply to liability
> for damages resulting from bodily injury, wrongful death or property damage
> caused by the negligence of public employees while acting within the scope of their
> duties in the operation or maintenance of any building, public park, machinery,
> equipment or furnishings.

NMSA 1978, § 41-4-6.   In *Archibeque*, the New Mexico Supreme Court rejected the plaintiff's

argument that the defendant, a prison intake officer, was participating in the operation of the New

Mexico State Penitentiary when she classified him as an inmate who could safely be released into

the general prison population such that immunity was waived under Section 41-4-6.   The Court

specifically held that "[t]he 'operation' and 'maintenance' of the penitentiary premises, as these

terms are used in Section 41-4-6, does not include the security, custody, and classification of

inmates."   866 P.2d at 347.   The Court further held:

> The purpose of Section 41-4-6 is to ensure the general public's safety by requiring
> public employees to exercise reasonable care in maintaining and operating the
> physical premises owned and operated by the government.   Moya-Martinez was
> not operating and maintaining the prison's physical premises when she negligently
> classified Archibeque as an inmate that could be released into the general prison
> population.   Rather, she was performing an administrative function associated
> with the operation of the corrections system.   Section 41-4-6 does not waive
> immunity when public employees negligently perform such administrative
> functions.   To read Section 41-4-6 as waiving immunity for negligent performance
> of administrative functions would be contrary to the plain language of the statute.

*Id.*

Just as the defendant in *Archibeque*, Dorman and Archuleta, classification officers with the

NMCD, and Marcantel, Director of the NMCD, were not operating and maintaining the physical

11

premises of the correctional facility where Plaintiff was detained when they allegedly "require[d] that Mr. Herrera remain in custody beyond the proper conclusion of his sentence."   Doc. 10 ¶ 34. Rather, in calculating the length of his term of incarceration, they were performing an administrative function associated with the operations of the corrections system.   As *Archibeque* makes clear, Section 41-4-6 does not waive immunity where, as here, public employees were allegedly negligent in performing such administrative functions.   To accept Plaintiff's invitation to read Section 41-4-6 as waiving immunity for Dorman, Archuleta and Marcantel's negligent performance of administrative functions would be contrary to New Mexico law.

### 2.   Waiver of Immunity for Law Enforcement Officers

Section 41-4-12 provides a waiver of immunity for law enforcement officers who have committed certain torts.   In order to state a claim under this provision, "a plaintiff must demonstrate that the defendants were law enforcement officers acting within the scope of their duties."   *Weinstein v. City of Santa Fe ex rel. Santa Fe Police Dep't*, 916 P.2d 1313, 1316 (N.M. 1996).   The NMCTA defines "law enforcement officer" as "any full-time salaried public employee of a governmental entity whose principal duties under law are to hold in custody any person accused of a criminal offense, to maintain public order or to make arrests for crimes, or members of the national guard when called to active duty by the governor."   NMSA 1978, § 41-4-3D.

In *Anchondo v. Corr. Dep't*, 666 P.2d 1255 (N.M. 1983), the New Mexico Supreme Court declined to find that either the Secretary of Corrections or the Warden of the state penitentiary were law enforcement officers under Section 41-4-3D.   The Court explained that neither of these positions involved "any of the traditional duties of 'law enforcement officers,'" but rather were "merely administrative officers."   *Id.* at 1256-57.   The Court further held that, "[t]o determine

12

whether positions are of a law enforcement nature," the court must "look at the character of the principal duties involved, those duties to which employees devote the majority of their time," and stated that the "fact that a person is employed at the penitentiary is not sufficient to establish that his job is one of law enforcement."  *Id.* at 1257.

Thereafter, in *Callaway v. N.M. Dep't of Corr.*, the New Mexico Court of Appeals held that corrections officers are not law enforcement officers for purposes of the NMCTA.   875 P.2d 393, 397 (N.M. Ct. App. 1994).   In reaching its determination, the Court found persuasive the holding in *Osborn v. Governor of N.M.*, Civ. No. 80-178 (D.N.M 1983) (Campos, J.), in which Judge Campos held that prison guards in the department of corrections are not law enforcement officers for purposes of Section 41-4-3D because: (1) the principal duties of prison guards are to hold in custody persons who have already been convicted rather than merely accused of a criminal offense; (2) maintenance of public order relates to a public not a penitentiary setting; and (3) although prison guards may have the supplemental power to arrest pursuant to the guidelines of Section 33-1-10, their principal statutory duties are those set forth in Section 33-2-15.   *Callaway*, 875 P.2d at 397.

In a footnote in a subsequent decision, the New Mexico Supreme Court recognized the holding in *Callaway*, noted that it has found that jailers at county jails are law enforcement officers within the meaning of Section 41-4-3D, and indicated that it "need not address in this opinion any potential conflict in the cases interpreting Section 41-4-3D."   *State v. Young*, 90 F.3d 477, 486 n.2 (N.M. 2004).   Accordingly, *Young* left intact the holding in *Callaway* and the distinction recognized by the Court of Appeals between corrections officers who hold in custody persons already convicted and county jailers who are in charge of inmates accused of crimes and awaiting trial.

13

Reading this precedent together, the Court concludes that Dorman, Archuleta, and Marcantel are not law enforcement officers within the meaning of Section 41-4-3D.   First, Plaintiff does not allege that Dorman, Archuleta, or Marcantel held law enforcement positions at NMCD.   To the contrary, Plaintiff alleges that they were administrative officers – "records coordinator," "classifications officer," and "director," respectively – responsible for calculating the length of Plaintiff's incarceration, "carrying out lawful sentences," and "releas[ing] prisoners upon the end of their sentences."   Doc. 10 ¶¶ 4, 21.   The Complaint is devoid of allegations that Defendants' positions were of a law enforcement nature.   The allegations that Dorman, Archuleta, and Marcantel were employed by NMCD are insufficient to state a claim that, if proven, would establish that any of their jobs is one of law enforcement.   Under *Anchondo,* Dorman, Archuleta, and Marcantel are not law enforcement officers whose immunity is waived under Section 41-4-12.

Further, the Complaint alleges that Dorman, Archuleta, and Marcantel are officers of the *corrections department* of the state of New Mexico, not a county jail.   Notably, the Complaint plainly alleges that Marcantel "was directly responsible for carrying out lawful sentences imposed on *persons remanded to the NMCD for incarceration by the New Mexico state court system*, and to release all *prisoners upon the end of their sentences*."   Doc. 10 ¶ 4 (emphasis added).   Indeed, at the time of his allegedly improperly prolonged incarceration, Plaintiff had been convicted of two crimes and was serving sentences in connection herewith at a state *correctional facility.* Accordingly, regardless of whether their positions were deemed to be of a law enforcement nature, Dorman, Archuleta and Marcantel are undisputedly "corrections officers," and under *Callaway,* on that basis alone, are not law enforcement officers for purposes of the NMCTA.   Thus, on this additional basis, the Court finds that Dorman, Archuleta, and Marcantel are not law enforcement

14

officers whose immunity is waived under Section 41-4-12.

## CONCLUSION

Defendants' reply brief was timely filed.   Defendants are entitled to Eleventh Amendment immunity on Plaintiff's official capacity claims for damages.   Because Plaintiff is not asserting a claim for declaratory relief, there is no basis for Defendants to be sued in their official capacity in this action.   Plaintiff has failed to allege any affirmative link between Defendant Marcantel and the alleged constitutional violations against Plaintiff; accordingly, Section 1983 liability may not be imposed against him.   The Fourth Amendment is not implicated by prolonged incarceration after a lawful conviction; accordingly, Plaintiff has failed to state a claim under the Fourth Amendment.   Plaintiff has provided fair notice to Defendants Dorman and Archuleta of the Eighth Amendment and Fourteenth Amendment claims against them.   No waiver of immunity under the NMCTA applies here, and thus Plaintiff has failed to state a claim under New Mexico law.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Strike Doc. 30 as Untimely Filed [Doc. 33] is **DENIED**.

**IT IS THEREFORE FURTHER ORDERED** that First Motion to Dismiss on Behalf of Randy Dorman, Lia Archuleta and Gregg Marcantel and Memorandum in Support Thereof [Doc. 23] is **GRANTED in part**, as follows:   all claims are dismissed as to Defendant Marcantel, in his official and individual capacity; the claims against Defendants Dorman and Archuleta in their official capacity are dismissed; Plaintiff's Fourth Amendment claim, set forth in Count 3, is dismissed in its entirety; and Plaintiff's state tort law claims, set forth in Count 4, are dismissed in their entirety.   The only claims remaining against Defendants Dorman and Archuleta are

15

Plaintiff's Section 1983 claims alleging violations of Plaintiff's Eighth Amendment and

Fourteenth Amendment rights, set forth in Counts 1 and 2.

DATED this 5th day of August, 2014.

MARTHA VÁZQUEZ
United States District Judge